**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19–CV–03631–DDD–MDB

CONTINENTAL CASUALTY COMPANY and
WESTERN SURETY COMPANY,

    Plaintiffs,

v.

ARROWROCK, LLC;
ASI CONSTRUCTORS, INC.;
ASI HOLDINGS, LLC;
HCP CONSTRUCTORS, INC.;
PATEL ENGINEERING, INC.;
PATEL ENGINEERING, LTD.;
BHIMSEN BATRA;
ELIZABETH B. BOWEN;
JOHN F. BOWEN; and
SONAL PATEL,

    Defendants.

---

**DEFENDANT PATEL ENGINEERING LTD.'S OPPOSITION TO MOTION TO
AMEND THE COMPLAINT AND FOR JURISDICTIONAL DISCOVERY**

---

Patel Engineering Ltd. (PEL) is incorporated in India, is headquartered in India, and did not negotiate or sign the Indemnity Agreement at the heart of Plaintiffs' case. Black-letter principles of personal jurisdiction require dismissal. Neither the broad-ranging jurisdictional discovery nor the unspecified amendments Plaintiffs request would change that. Despite listing several categories of information they would seek in discovery or add to their complaint, Plaintiffs do not explain how any of that information—which overlaps with allegations already in the first amended complaint (FAC)—could overcome the deficiencies that PEL identified in its motion to

dismiss. *See* Dkt. 88; Dkt. 96. Plaintiffs also fail to attach a proposed amended pleading, as Local Rule 15.1(b) requires. Lack of compliance aside, the facts as already pled show that neither discovery nor amendment would plausibly be able to establish personal jurisdiction over PEL. The Court should deny Plaintiffs' motion.

### ARGUMENT

**I.     Plaintiffs Are Not Entitled to Jurisdictional Discovery**

Discovery is unwarranted for two independent reasons. First, Plaintiffs have not met their burden of identifying specific facts that their wide-ranging discovery requests would reveal and explaining how those facts could plausibly establish jurisdiction over PEL. Second, even if Plaintiffs were permitted to conduct their fishing expedition, there is "a 'low probability' that additional discovery would reveal sufficient facts" to establish personal jurisdiction. *Gordon & Howard Assocs., Inc. v. Lunareye, Inc.*, No. 13-CV-01829, 2013 WL 5637678, at *4 (D. Colo. Oct. 15, 2013).

**A.     Plaintiffs' Broad Requests Do Not Satisfy the Standards Governing Jurisdictional Discovery**

To start, Plaintiffs misstate the legal standard, incorrectly asserting a blanket rule that it "is an abuse of discretion to deny jurisdictional discovery." Mot. 2-3 (Dkt. 97). Jurisdictional discovery is discretionary, and courts exercise their discretion judiciously. *Graham v. United States*, No. 21-CV-3053-NYW, 2022 WL 3212926, at *2 (D. Colo. Aug. 9, 2022). The fact that a case "is in its preliminary stage and discovery has not commenced" is "not enough for the Court to grant [a] request" for jurisdictional discovery. *Thompson v. Ford Motor Co.*, No. 18-CV-3324-WJM-KMT, 2019 WL 4645446, at *7 (D. Colo. Sept. 24, 2019). Rather, "the burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing

2

from the discovery's denial—[is] on the party seeking the discovery." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010).

Courts deny jurisdictional discovery when a plaintiff fails to meet this burden. In particular, courts deny discovery when plaintiffs do not identify specific "facts or evidence that [they] believe[] [their] wide-reaching discovery request[s] would reveal" and explain how those facts bear on the existence of personal jurisdiction. *Graham*, 2022 WL 3212926, at *4 (quoting *Lystn, LLC v. FDA*, No. 19-CV-1943-PAB-KLM, 2020 WL 5513409, at *9 (D. Colo. Sept. 14, 2020)). For example, the Tenth Circuit has affirmed the denial of jurisdictional discovery when a plaintiff "d[id] not tell us what specific documents [they] would have sought in discovery," and instead had merely "sought information regarding" a list of topics like "the frequency and degree of [the defendant's] physical contacts with Colorado," and "the observation of corporate formalities, financial structure, and relationship among each of the Defendants." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 104-05 (10th Cir. 2012). Likewise, courts do not permit "attempt[s] to 'use discovery as a fishing expedition' rather than to obtain needed documents to defeat" the motion to dismiss. *Breakthrough Mgmt. Grp., Inc.*, 629 F.3d at 1190 (quoting *Anthony v. United States*, 667 F.2d 870, 880 (10th Cir. 1981)).

Plaintiffs' motion fails these standards. Their request consists of a bulleted list of far-reaching topics on which they would seek "information." Mot. 5-6. For example, Plaintiffs' first request seeks "information regarding … PEL's claimed ownership of ASI. Why it claimed the ownership, how it received information from ASI in Colorado regarding ASI's finances and operation." *Id.* at 5. Just like in cases where courts have denied jurisdictional discovery, Plaintiffs do not identify what *actual* materials they would pursue; their request to obtain "information

3

regarding" this broad topic is insufficient. *Grynberg*, 490 F. App'x at 104. And Plaintiffs' motion makes no effort to tie these broad categories of information to the legal standards governing personal jurisdiction, let alone explain how the facts, if discovered, would support jurisdiction.

Plaintiffs' failure is particularly glaring because the parties have fully briefed PEL's motion to dismiss for lack of personal jurisdiction. Despite a full preview of PEL's jurisdictional arguments in its motion (Dkt. 88) and reply (Dkt. 96), Plaintiffs make no effort to explain how any of the information they reference would bear on their ability to establish either general or specific personal jurisdiction over PEL—an Indian company that did not sign the Indemnity Agreement that is the basis for this litigation. On the contrary, for the reasons explained in the following section, the information Plaintiffs seek through discovery would not overcome the deficiencies in the operative complaint.

### B. Plaintiffs' Requests Have a "Low Probability" of Yielding Information Material to Its Claims Against PEL

Plaintiffs' request fails for an independent reason: Even if Plaintiffs were permitted to conduct their fishing expedition, they would not be able to establish jurisdiction over PEL. As explained more fully in PEL's briefing on its motion to dismiss—which this Court denied without prejudice pending resolution of Plaintiffs' motion here (Dkt. 98)—the facts pled in Plaintiffs' amended complaint (Dkt. 16) and the Indemnity Agreement itself (Dkt. 88-1) preclude personal jurisdiction over PEL. The categories of information Plaintiffs identify in their motion—which overlap substantially with allegations already in the FAC—have a "low probability" of altering that conclusion, which warrants denial of Plaintiffs' motion. *Lunareye,* 2013 WL 5637678, at *4.

"[J]urisdiction over the person … is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v.*

4

*Marathon Oil Co.,* 526 U.S. 574, 583-84 (1999) (cleaned up). Plaintiffs bear the burden to establish jurisdiction over each defendant. *Perez v. FCA USA LLC*, No. 18-CV-03225-DDD-STV, 2019 WL 6174434, at *1 (D. Colo. Nov. 20, 2019). Because Colorado's jurisdictional statute extends to the limits of the U.S. Constitution, courts perform "a single due process inquiry." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Personal jurisdiction can be established over a defendant either for all purposes ("general" jurisdiction) or arising out of specific forum-related conduct ("specific" jurisdiction). *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Plaintiffs cannot establish either.

### 1. *Plaintiffs Cannot Establish General Jurisdiction*

Plaintiffs have never attempted to establish general jurisdiction, and none of the categories of information Plaintiffs seek through discovery could do so. For corporations, general jurisdiction is available only where the corporation's contacts "are so constant and pervasive" "as to render [it] essentially at home." *Id.* at 122. A corporation is "at home" at its "place of incorporation" and its "principal place of business." *Id.* at 137. It is undisputed that PEL is only "at home" in India: it is "a corporation organized and existing under the laws of the Country of India" with its "principal place of business" in Mumbai, India. FAC ¶15. No amount of forum-related activity can subject a foreign corporation to general jurisdiction where the company is not "at home." *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (no jurisdiction despite "over 2,000 miles of railroad track and more than 2,000 employees" in the forum). Thus, while Plaintiffs request discovery into "PEL's forum related contacts including its bank accounts, travel to Colorado, real property, investments and companies in which it holds an interest," Mot. 5, none of those categories of information could establish general jurisdiction over India-based PEL.

5

Plaintiffs' motion references PEL's "ownership" or "operation" of two alleged Colorado-based subsidiaries: Patel Engineering, Inc. (PEI) and ASI Constructors. Mot. 5-7. But facts regarding these separate business entities cannot establish general jurisdiction over PEL. Courts following *Daimler* uniformly hold that an in-state subsidiary or agent, without more, does not create general jurisdiction over a corporate parent. *See, e.g.*, *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014).

Rather, a subsidiary's or agent's contacts are not imputed to a corporate parent unless the plaintiff satisfies the stringent requirements to establish an "alter ego" relationship—*i.e.*, such "unity of interest and ownership that the separate personalities of the two entities no longer exist." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017). While Plaintiffs in their motion to amend their complaint suggest that they would allege that PEI is in fact PEL's alter ego, Mot. 7, there is no realistic possibility that they could show that to be true—and Plaintiffs do not even attempt to identify what information they would seek to make that showing. Courts treat corporate entities as alter egos only in the rare case where "the subsidiary has no real separate corporate existence." *BASF Corp. v. Willowood, LLC*, 359 F. Supp. 3d 1018, 1026 (D. Colo. 2019) (dismissing alter ego allegations as insufficient to establish personal jurisdiction). The FAC alleges that PEI is a separate corporate entity from PEL, "organized and existing under the laws of the State of Colorado" with a "place of business" in Englewood, Colorado. FAC ¶14. PEI is already a Defendant in this case; it is represented by separate counsel; and it has already answered the Complaint. *See* Dkt. 51; FAC ¶¶14-15. There is no basis for general jurisdiction, under an alter ego theory or otherwise.

### *2. Plaintiffs Cannot Establish Specific Jurisdiction*

Nor would Plaintiffs' requested discovery move the needle on specific jurisdiction. Specific jurisdiction requires three elements. First, Plaintiffs must show that PEL "purposefully directed [its] activities" at the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Second, Plaintiffs' claim must "arise out of or relate to" PEL's forum activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984), meaning that PEL's contacts must be "the subject matter of th[e] case," *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1281 (10th Cir. 2016); *see Hood v. American Auto Care, LLC*, 21 F.4th 1216, 1224 (10th Cir. 2021) (contacts must be "essentially the same type" as the complained-of activity). Third, courts must ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476.

The facts as stated in the amended complaint and the Indemnity Agreement preclude Plaintiffs from meeting these requirements. It is undisputed that PEL did not sign the Indemnity Agreement. *See* Dkt. 88-1. And it is axiomatic that "provisions of a contract cannot be enforced against those who are not parties to the contract." *Broderick v. McElroy & McCoy, Inc.*, 961 P.2d 504, 506 (Colo. App. 1997).

Plaintiffs have sought to circumvent this dispositive fact by attributing to PEL the alleged acts of Sonal Patel, whom Plaintiffs characterize as PEL's agent. Mot. 6; *see* FAC ¶30. Plaintiffs also invoke ties between PEL, Ms. Patel, and separate corporate entities (PEI and ASI) that Plaintiffs allege are subsidiaries of PEL. Mot. 5-6. But for several reasons, Plaintiffs cannot plausibly establish jurisdiction under this agency-dependent theory.

*First*, the Indemnity Agreement *itself* excludes undisclosed principals. "An undisclosed principal does not become a party to a contract if the contract excludes the principal." Restatement (Third) of Agency §6.03 cmt. d (2006); *Filho v. Rodriguez*, 36 P.3d 199, 200 (Colo. App. 2001). The Indemnity Agreement does just that. The contract defines "Indemnitors" as the named individuals and entities that signed the contract, plus "their heirs, executors, administrators and assigns." Dkt. 88-1 at 1 ("Therefore" Clause). PEL is not the heir, executor, administrator, or assign of any signatory, and therefore is outside the circumscribed definition of parties. The contract, moreover, includes an anti-assignment provision, which gives the Plaintiff-Insurers the right to control and consent to any unnamed entity that might someday assume contractual rights or responsibilities. *Id.* ¶20. Finally, Ms. Patel expressly signed the agreement in her "individual" capacity. *Id.* at 4. These features manifest the exclusion of undisclosed principals. If Plaintiff CNA—one of the largest commercial insurers in the United States, with annual revenues exceeding $11 billion—wanted to write a contract that allowed it to go after deeper-pocketed "undisclosed principals," it could have done so.[1] No amount of discovery into supposed acts of PEL's agents or subsidiaries could change the fact that the contract itself precludes binding PEL.

*Second*, even if the agreement allowed signatories to bind undisclosed principals, Plaintiffs are unable to establish that Sonal Patel possessed "actual authority" to bind PEL—as would be necessary to establish jurisdiction under Plaintiffs' agency theory. Dkt. 88 at 6-11; Dkt. 96 at 4-7. Only allegations of actual authority are relevant because Plaintiffs affirmatively deny having any impression that Ms. Patel was acting as PEL's agent when negotiating the indemnity, FAC ¶31, and in fact *insisted* that the indemnitors be "separate from PEL," Pls.' Opp. to MTD, Dkt. 92, at

---

[1] CNA Fin. Corp., Annual Report, at 3, 31 (Feb. 8, 2022), https://bit.ly/3aISzex.

4. *See* Restatement (Third) of Agency §2.06 cmt. c ("Apparent authority does not arise when a principal is undisclosed.").

To establish actual authority, Plaintiffs must show that Sonal Patel, were she an agent of PEL, was acting on behalf of PEL *when signing the Indemnity Agreement*. It is insufficient to allege simply that Ms. Patel may have been an agent of PEL for some purposes; the law requires proof that Ms. Patel was PEL's agent for the relevant act:

> <u>The principal becomes a party to the transaction only if it is proved that the agent intended to act upon his account</u>. It is not enough that the proof shows that the one negotiating the contract acted generally for the benefit of the one sought to be charged or because of something initiated by him. <u>The proof must be that the one making the contract was acting as agent in a matter entrusted to him as agent</u>.

Restatement (Second) of Agency §186 cmt. c (1958) (emphasis added); *accord* Restatement (Third) of Agency §6.03.

Requiring *matter-specific* authority *and* intent makes practical sense. Even if Ms. Patel could bind PEL in certain transactions, it would be absurd to allow her to bind PEL—without authority or intent—to every contract she signed. A law-firm partner can bind her firm to a retainer agreement; she cannot (and presumptively does not intend to) bind the firm to pay her personal mortgage or student loans. The agency relationship must extend to the particular conduct at issue in the suit. *See, e.g.*, *Villalpando v. Denver Health & Hosp. Auth.*, 181 P.3d 357, 363 (Colo. App. 2007) (while agent "assumed responsibility" to defend principal in medical malpractice suits, court found no agency relationship with respect to the particular conduct at issue, which was accepting notices of malpractice claims for which the University was responsible).

This requirement of matter-specific agency renders irrelevant most of the information Plaintiffs seek. For example, Plaintiffs request discovery into PEL's alleged "loan to Sonal Patel

9

to purchase shares of ASI," as well as the "scope of Sonal Patel's duties at PEL specifically with regard to ASI and global subsidiaries and the scope of her authority to act on behalf of PEL." Mot. 5. The FAC already contains extensive allegations about these sorts of business connections between Ms. Patel, ASI, and PEL. *E.g.*, FAC ¶32 ("Sonal Patel's family, through Patel Engineering, Ltd loaned the money to finance Ms. Patel's majority share in ASI Constructors, Inc."); *id.* ¶34 (alleging that Ms. Patel was a PEL board member, executive, or promoter); Dkt. 88 at 7 (addressing insufficiency of these allegations); Dkt. 96 at 5-6 (same). The problem with these allegations is not a lack of discovery. It is that these facts, even if true, do not establish agency with respect to the Indemnity Agreement. That deficiency is dispositive, because the activity of an employee—even a high-level manager—is *not* automatically imputed to the business. *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Canada, Ltd.*, 703 F.3d 488, 494 (10th Cir. 2012) (forum contacts of joint venture's managing partner did not establish jurisdiction over the joint venture). Rather, personal jurisdiction requires that the defendant "*targeted* the forum state," *Anzures*, 819 F.3d at 1281 (emphasis added), which in the context of agency allegations requires that the agent was specifically authorized to perform the acts giving rise to the suit.

For similar reasons, the "Call Option Agreement," Mot. 6, is irrelevant. *See* Dkt. 88 at 10; Dkt. 96 at 6. Plaintiffs' complaint already alleges that this Agreement reflects "that Sonal Patel's family, through [PEL] loaned the money to finance Ms. Patel's majority share in ASI Constructors, Inc." FAC ¶32. But PEL's purported investment in ASI Constructors is not "the subject matter of this case." *Anzures*, 819 F.3d at 1281. Plaintiffs do not allege a breach of the Call Option Agreement; rather, Plaintiffs invoke the agreement as *evidence* of a financial connection between Ms. Patel, ASI, and PEL. FAC ¶¶ 31-32. As such, the claims here do not arise from or relate to—

10

*i.e.*, they were not "essentially the same as"—that purported contact. *Hood*, 21 F.4th at 1220 (applying *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021)); *see also Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020) ("[A]n out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction.").

And while Plaintiffs claim they would pursue information about PEL's "words or conduct directed towards" Ms. Patel's "entering into the indemnity agreement," Mot. 5-6, Plaintiffs acknowledge that they already had the opportunity to examine Ms. Patel under oath about the indemnity prior to filing this lawsuit, *id.* at 4. They devoted significant questioning to PEL specifically. *See* Dkt. 92-3 (Ex. 3 to Pls.' MTD Opp.). Ms. Patel disclaimed acting for PEL and acknowledged her personal responsibility "to reimburse the surety." Dkt. 88-2 at 85:12-19. Though Plaintiffs undoubtedly wish Ms. Patel had different answers, they do not explain why further discovery on this point is necessary.

***Third***, Plaintiffs refer to two Colorado-based subsidiaries, PEI and ASI, to suggest that these ties to PEL could establish specific jurisdiction. Mot. 5-6. The FAC already contains extensive allegations along these same lines. *See* FAC ¶35 (PEL "listed ASI Constructors, Inc. as its subsidiary"), *id.* ¶87(e) (PEL was "in true control of the majority interest in ASI"). But as PEL already explained, *see* Dkt. 88 at 4, 10; Dkt. 96 at 5-6, ownership interest in another company does not create jurisdiction. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) ("[A] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity."). As noted

11

above, there is no basis for Plaintiffs' brash speculation that PEI may be an "alter ego" of PEL rather than its separate subsidiary.

### 3. *Exercising Jurisdiction Would Offend Notions of Fair Play and Substantial Justice*

Finally, Plaintiffs' requested discovery could not establish personal jurisdiction because, regardless of Plaintiffs' ability to prove sufficient suit-related contacts between PEL and Colorado, exercising jurisdiction would not "comport with 'fair play and substantial justice.'" *Old Republic*, 877 F.3d at 903 (quoting *Burger King*, 471 U.S. at 476). The "primary concern" for fairness is "the burden on the defendant," *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017), which here would be substantial. If claims against Mumbai-based PEL proceed to trial, it may require Indian witnesses to travel to and testify in Colorado. "When the defendant is from another country," concerns regarding such burdens are "heightened and great care and reserve should be exercised before personal jurisdiction is exercised over the defendant." *OMI Holdings v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998). Moreover, "the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness." *Id*. at 1092. PEL's alleged indirect contacts with Colorado pale in comparison to the burden of having to litigate this dispute half a world away. Specific jurisdiction would be unreasonable, even if PEL had the requisite minimum contacts with Colorado. *Id.* at 1095-96 (jurisdiction violated due process notwithstanding defendants' "minimum contacts with Kansas").

## II. Plaintiffs Are Not Entitled to Another Amendment of the Complaint

For several independent reasons, Plaintiffs should not be permitted to file a second amended complaint.

***First***, Plaintiffs' request violates Local Rule 15.1(b), which requires that the party seeking amendment submit "a copy of the proposed amended or supplemental pleading which strikes through … the text to be deleted and underlines … the text to be added." Plaintiffs' failure to submit their amended pleading warrants denial of their motion. *See, e.g.*, *Brooks v. Corr. Health Partners*, No. 18-CV-2578-PAB-SKC, 2022 WL 204598, at *1-2 (D. Colo. Jan. 24, 2022); *LNV Corp. v. Hook*, No. 14-CV-955-RM-CBS, 2017 WL 11487876, at *2 (D. Colo. Mar. 16, 2017).

***Second***, and relatedly, Plaintiffs' laundry list of "issues" is not nearly specific enough to justify amendment. "A request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it." *McNamara v. Pre-Paid Legal Servs., Inc.*, 189 F. App'x 702, 718 (10th Cir. 2006) (quoting *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186-87 (10th Cir. 1999)). Courts thus deny amendment when a plaintiff does not "set forth or otherwise provide any details of any proposed amendment for the Court to consider." *Hook*, 2017 WL 11487876, at *2. This requirement of specificity "assures that district courts are not required to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists." *Id*. (cleaned up). Plaintiffs' request, which includes no examples of *actual* allegations that they would add to their complaint, does not meet these standards. *See, e.g.*, *Stonefield v. Lopez*, No. 19-cv-17-LTN, 2019 WL 3409880, at *9 (D. Colo. July 29, 2019) (amendment denied because plaintiff's request "to assert further facts showing that Defendants had no basis to charge her with filing a false report" did "not sufficiently put Defendants, nor the Court, on notice to the basis of the request").

***Third***, Plaintiffs' request for amendment presupposes "additional facts discovered during jurisdictional discovery which are relevant." Mot. 6. As explained, Plaintiffs have not established that they are entitled to discovery, and their requested discovery is highly unlikely to produce "relevant" facts.

***Finally***, amendment to address the broad issues Plaintiffs identify would be futile. Courts "may refuse to allow amendment if it would be futile," *i.e.*, "if the complaint, as amended, would be subject to dismissal." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). That is the case here. As explained in the context of Plaintiffs' request for jurisdictional discovery, additional information regarding the "issues" Plaintiffs enumerate would not suffice to establish that PEL signed the contract at issue in this case or otherwise took suit-related actions directed toward Colorado that could support specific jurisdiction. On the contrary, these issues overlap with allegations already included in the amended complaint, which fail as a matter of law for the reasons described above and in PEL's motion to dismiss.

## CONCLUSION

PEL respectfully asks the Court to deny Plaintiffs' motion.

Dated: September 20, 2022         Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Timothy R. Macdonald*
　　　　　　　　　　　　　　　　　　Timothy R. Macdonald
　　　　　　　　　　　　　　　　　　Robert Reeves Anderson
　　　　　　　　　　　　　　　　　　ARNOLD & PORTER KAYE SCHOLER LLP
　　　　　　　　　　　　　　　　　　1144 Fifteenth Street, Suite 3100
　　　　　　　　　　　　　　　　　　Denver, Colorado 80202
　　　　　　　　　　　　　　　　　　Tel: (303) 863-1000
　　　　　　　　　　　　　　　　　　Fax: (303) 863-2301
　　　　　　　　　　　　　　　　　　Timothy.Macdonald@arnoldporter.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) because it contains 3,913 words, excluding the sections set forth in Standard III(A)(3).

/s/ Timothy R. Macdonald
Timothy R. Macdonald
*Counsel for Defendant Patel Engineering, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2022, I served via CM/ECF the foregoing **DEFENDANT PATEL ENGINEERING LTD.'S OPPOSITION TO MOTION TO AMEND THE COMPLAINT AND FOR JURISDICTIONAL DISCOVERY** on all counsel of record.

/s/ Tanya D. Huffaker
Tanya D. Huffaker