IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 19–cv–03631–DDD–MDB

CONTINENTAL CASUALTY COMPANY, and
WESTERN SURETY COMPANY,

      Plaintiffs,

v.

ARROWROCK, LLC,
ASI CONSTRUCTORS, INC.,
ASI HOLDINGS, LLC,
HCP CONSTRUCTORS, INC.,
PATEL ENGINEERING, INC.,
PATEL ENGINEERING, LTD.,
BHIMSEN BATRA,
ELIZABETH B. BOWEN,
JOHN F, BOWEN, and
SONAL PATEL,

      Defendants.

## ORDER

Before the Court is Plaintiffs' Motion to Amend the Complaint and for Jurisdictional Discovery. ([the "Motion"]; Doc. No. 97.) Defendant Patel Engineering, Ltd. ["PEL" or "Defendant PEL"] filed a Response to which Plaintiffs have replied. (["Response"], Doc. No. 100; ["Reply"], Doc. No. 101.) For the following reasons, the Motion is **granted in part and denied in part**.

      **I.**      **BACKGROUND**

Plaintiffs filed an initial complaint in this matter on December 19, 2019. (Doc. No. 1.) On January 31, 2020, Plaintiffs amended their original complaint, adding Patel Engineering, Inc., and PEL as defendants to the action. (Doc. No. 16.) In the Amended Complaint, Plaintiffs assert seven (7) causes of action: 1) contractual indemnity against all Defendants; 2) equitable indemnity against all Defendants; 3) subrogation against Defendant ASI Constructors Inc. ["Defendant ASI"]; 4) declaratory judgment against all Defendants; 5) specific performance against all Defendants; 6) fraudulent transfer against Defendant Sonal Patel and Defendant Bhimsen Batra; and 7) fraud by nondisclosure or concealment against Defendant ASI, Defendant PEL, and Defendant Patel Engineering, Inc. (*Id.*) Defendants Arrowrock LLC, ASI, ASI, Holdings, Inc., and HCP Constructors, Inc. have not participated in the case and are subject to entries of default by the Clerk. (Doc. Nos. 37; 38; 106; 107.) Defendants Batra, Elizabeth Bowen, John Bowen, Sonal Patel, Patel Engineering, Inc., and PEL are actively defending themselves. (*See* Doc. Nos. 32; 43; 51; 88.)

*Overview of Plaintiffs' Allegations*

Plaintiffs, surety bonding companies, bring allegations stemming from an alleged bond deal gone bad. While the entire scope of the allegations made by Plaintiffs is immaterial to this order, a summary of relevant events follows:

At the request of Defendant ASI—"a heavy civil contractor that specializes in the construction of dams and other water related infrastructure"—Plaintiffs agreed to write bonds "to guarantee payment to subcontractors and vendors on numerous projects … performed by ASI …

and to guarantee ASI's performance on such projects."[1] (Doc. No. 16 at 6.) Though Defendant ASI apparently took the lead in drafting the agreement, the remaining Defendants, with the exception of Defendant PEL and Defendant Patel Engineering, Inc., were also signatories with Plaintiffs. (*Id.* at 2–6.) The bond agreement was subject to an indemnity agreement which "require[d] the Defendants to indemnify and keep indemnified the Plaintiffs from all liability under the Bonds issued by the Plaintiffs on behalf of ASI." (*Id.*) The agreement appears to have been signed by the parties on September 30, 2009. (*See* Doc. No. 88 Ex A.)

Eventually, Defendants "defaulted on certain obligations … [that were] within Plaintiffs' obligations under the Bonds." (Doc. No. 16 at 10.) At the time of their Amended Complaint, Plaintiffs had "paid claims in excess of $46,000,000 on the Bonds" to entities harmed by Defendants' default. (*Id.* at 12.) While Plaintiffs "have received certain funds from the Projects on which Bond payments were made," Plaintiffs still "anticipated [a] shortfall … in excess of $21,000,000." (*Id.*) Plaintiffs' first five causes of action stem from Defendants' alleged failure to reimburse Plaintiffs, in violation of the terms of the indemnity agreement, for payments Plaintiffs were forced to make to third parties due to Defendants defaulting on certain obligations. (*Id.* at 15–20.)

***Defendant PEL and Personal Jurisdiction***

Defendant PEL is "a corporation organized and existing under the law of the Country of India, with [it's] principal place of business at Patel Estate, Jogeshwari (W), Mumbai – 400 102,

---

[1] "ASI entered into various public and private works contracts … for construction services …. ASI [was to] provide the respective project owner or general contractor with a Performance Bond and Payment Bonds with the penal sum specified in the respective bonds." Plaintiffs then issued the bonds. (Doc. No. 16 at 9.)

Maharashtra, India." (*Id.* at 5–6.) Plaintiffs do not allege that Defendant PEL was a signatory to the indemnity agreement at issue in this matter. (*Id.*) However, Plaintiffs maintain that PEL "is bound by the terms of the Indemnity Agreement." (*Id.*) The crux of Plaintiffs' argument—both in support of the Court's personal jurisdiction over PEL and Plaintiffs' substantive claim against PEL—is that Defendant Sonal Patel, a signatory to the Indemnity Agreement, was operating as an undisclosed agent for PEL. This allegation is further discussed in the Court's analysis, below.

On June 28, 2022, Defendant PEL moved to dismiss the claims against it, primarily arguing that Plaintiffs' Amended Complaint failed to establish that the court had personal jurisdiction over it. (Doc. No. 88 at 3–12.) PEL argued that Plaintiffs could not support their assertion that Defendant Sonal Patel was acting as an undisclosed agent for PEL when she signed the indemnity agreement. In other words, Defendant PEL argues that Defendant Sonal Patel's actions in this District cannot be imputed to PEL. In the alternative, PEL argued that even if Defendant Patel was an undisclosed agent, the terms of the bond agreement expressly forbid that it could be used to bind an undisclosed principal (in this case PEL), making it impossible for Defendant Sonal Patel's actions to establish the requisite contacts with the District. (*Id.*)

In response to PEL's motion to dismiss, Plaintiffs filed the instant Motion seeking to amend their operative Complaint further and seeking leave to conduct jurisdictional discovery related to PEL. (Doc. No. 97.) On August 31, 2022, the Honorable Daniel D. Domenico denied PEL's motion to dismiss without prejudice for violating his practice standards.[2] (Doc. No. 98;

---

[2] Judge Domenico's practice standards require that a party confer with the opposing party prior to filing a motion to dismiss. PEL's failure to confer came to light in the instant Motion where Plaintiffs say, "PEL violated the Court's practice standards by not conferring with Plaintiffs regarding a curative amendment before filing its Motion to Dismiss in violation of the Court's Practice Standards DDD Civ. P.S. III(D)(1). (Doc. No. 97 at 2.)

DDD Civ. P.S. III(D)(1).) Judge Domenico instructed PEL that it could refile its motion to dismiss after the Court had ruled on the instant Motion. (Doc. No. 98.)

## II.  LEGAL STANDARD

### A.  Jurisdictional Discovery

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling–Temco–Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir.1975). "If the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite contacts, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Regional Airline Management Systems, Inc. v. Airports USA, Inc.*, No. 06-cv-01758-WYD-CBS, 2007 WL 1059012, at *6 (D. Colo. Apr. 4, 2007) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir.2003)). "[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant." *Sizova v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1326 (10th Cir.2002) ("Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted ... or where a more satisfactory showing of the facts is necessary'" (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977)).

However, a party's access to jurisdictional discovery is not totally unfettered nor without certain limits. To this end, "[t]he Tenth Circuit has stated that a district court does not abuse its discretion when it denies a general, unsupported motion for jurisdictional discovery." *Central Wyoming Neurosurgery v. Barta-Iso*, No. 13-cv-77-ABJ, 2013 WL 2457705, at *4 (D. Wyo. June 6, 2013) (citing *World Wide Ass'n of Specialty Programs & Sch. v. Houlahan*, 138 F.

5

App'x 50, 52 (10th Cir. 2005)). A party seeking jurisdictional discovery must establish what is hoped to be discovered with reasonable specificity. *Id.* at 4 (citing *World Wide Ass'n of Specialty Programs*, 138 F. App'x at 52. Further, jurisdictional discovery cannot be used "as a fishing expedition" but instead must be targeted at "need[ed] documents to defeat" a motion to dismiss. *Breakthrough Mgmt. Grp., Inc v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1190 (10th Cir. 2010.) In the end, however, "the trial court 'is vested with broad discretion and should not be reversed unless discretion is abused.'" *Gyrnberg v. Ivanhoe Energy, Inc.*, 666 F.Supp. 2d 1218, 1227 (D. Colo. 2009) (quoting *Budde*, 511 F.2d at 1035).

**B.      Amending a Complaint**

Except when an amendment is pleaded "as a matter of course," as defined by Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir.2009). Courts "should freely grant leave when justice so requires." *Id.* The rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip.*, 451 F.3d 1196, 1204 (10th Cir.2006) (internal quotations omitted). Therefore, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993). Whether to grant leave to amend the pleadings pursuant to Rule 15(a) is within the court's wide discretion. *See Minter*, 451 F.3d at 1204 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, (1971)).

Additionally, in this District, "[a] party who files an opposed motion for leave to amend or supplement a pleading shall attach as an exhibit a copy of the proposed amended or supplemental pleading which strikes through (e.g. ~~strikes through~~) the text to be deleted and underlines (e.g. underlines) the text to be added." D.C.COLO.LCivR 15.1(b).

### III. ANALYSIS

**A.     Plaintiffs' Request for Jurisdictional Discovery**

Although resolution of the request for jurisdictional discovery does not require a fulsome personal jurisdiction analysis, the Court notes that personal jurisdiction over PEL is subject to a legitimate good faith dispute. (*See* Doc. No. 16.) Broadly, the Complaint alleges that the Court has jurisdiction over PEL because Defendant Sonal Patel was operating as an undisclosed agent for PEL when she signed the Plaintiffs' Indemnity Agreement. More specifically:

- Defendant Sonal Patel had a majority interest share in Defendant ASI. PEL loaned Defendant Sonal Patel the money to finance her majority share of ASI. (*Id.* at 13.)

- Defendant Sonal Patel and the "Patel Group/Family" previously executed a "Call Option Agreement" whereby the Patel Group could exercise the option and obtain Defendant Sonal Patel's shares in ASI. (*Id.* at 12, 14, 15.)

- The purpose of the Call Option Agreement was "to conceal the fact that the acts of Sonal Patel were also the acts of [PEL]" and to "induce the Plaintiffs to issue bonds without obtaining the signed indemnity of [PEL]." (*Id.* at 12.)

- PEL's Indian stock market disclosures list ASI as a "subsidiary company," and the "ownership interest they claimed is identical to Sonal Patel's ownership interest in ASI." (*Id.* at 14.)

- "Sonal Patel … at times relevant to the wrongful acts alleged herein was on the Board of Directors of [PEL], the Chief Operating Officer of [PEL] a Promoter of [PEL] and an officer on the Board of Directors of [Defendant Patel Engineering, Inc.]" (*Id.*)

These factual allegations plausibly establish that, during the relevant period, Defendant Sonal Patel was acting as an agent for PEL. The Court's jurisdiction over Sonal Patel has not been disputed by the parties. Thus, these factual allegations are sufficient to "suggest 'with reasonable particularity' the possible existence of the requisite contacts" for personal jurisdiction over PEL. *Regional Airline Management Systems, Inc.*, 2007 WL 1059012, at *6 (quoting *Toys "R" Us, Inc.* 318 F.3d at 456). In other words, the contacts alleged do not suggest that jurisdictional discovery would amount to a simple fishing expedition. *Cf. Id.* (denying jurisdictional discovery when the plaintiff had "not alleged any facts that suggest with the requisite degree of particularly the possibility of contacts in this state" and thus had "not presented sufficient nonfrivolous allegations" to support jurisdictional discovery). This is not to say that Plaintiffs have established personal jurisdiction. Indeed, PEL makes a compelling argument that the Amended Complaint fails to meet the requisite standard—and the Court makes no finding on this front. (*See* Doc. Nos. 88; 100.) However, Plaintiffs do paint a plausible picture, supported by reasonably detailed allegations, that an individual was involved in the bond agreement at the heart of this dispute while operating as an employee or agent of PEL. *See Ubel*

*v. Progressive Direct Ins. Co.*, No. 20-CV-00204-RM-NYW, 2020 WL 5803323, at *5 (D. Colo. June 9, 2020) (finding that "[t]hough both Defendants have made compelling arguments that personal jurisdiction does not exist as to them" Plaintiff had presented sufficient allegations to "be permitted to take some limited jurisdictional discovery").

Finding that the operative Complaint sufficiently pleads the possible existence of personal jurisdiction over PEL, the Court next turns to review the information and materials sought by Plaintiffs.

Plaintiffs' Motion is vague in describing the specific items and information it would seek in jurisdictional discovery. (*See* Doc. No. 97 at 5–6.) PEL notes this vagueness in its Response and argues that Plaintiffs "broad requests" do not satisfy the standards that govern jurisdictional discovery. (*See* Doc. No. 100 at 2–4.) Apparently acknowledging PEL's point, Plaintiffs' Reply includes a far more detailed description of the "categories of documents or testimony requested:"

> o 1) … Documents including emails, correspondence, and communications between PEL and Sonal Patel or PEI with regard to:
>
>> ▪ PEL's investment in ASI including the terms of the investment, the form of the investment, the amounts, and the timing;
>> ▪ Why PEL claimed ASI as a subsidiary;
>> ▪ Sonal Patel's role at PEL, ASI, PEI[3] and her responsibilities;
>> ▪ Discussions of ASI's need for a surety or the requirement for indemnity in a surety relationship;
>> ▪ Who at PEL was responsible for managing its investment in ASI;
>> ▪ Reporting from Sonal Patel, PEI and/or ASI to PEL with regard to the operations of ASI, including its operations, performance, claims made on its surety bonds, financial needs, and financial condition (for example, PEL used ASI's audited financial statements to report the value of the investment in disclosures for the Indian Stock Market) and any instructions from PEL to Sonal Patel regarding ASI;
>> ▪ The Call Option agreement, its creation and PEL's decision to take control of Sonal Patel's shares in ASI.

---

[3] Plaintiffs use "PEI" to refer to Patel Engineering, Inc.

9

> o 2) … Documents including emails, correspondence, and communications other agreements with regard to:
> - Other agreements or transactions Sonal Patel entered into on behalf of PEL or PEI with regard to a subsidiary, and if she required specific authorization to enter into each agreement.
>
> o 3) … Documents including emails, correspondence, and communications regarding:
> - ASI's surety relationships (and its predecessor ASI, RCC) (either with Plaintiffs or with its prior bonding company) including any discussion regarding entering into or maintaining the relationships as well as the required indemnification.
>
> …
>
> o 5) [Information related to]
> - PEL's contacts with Colorado including property it owns or its subsidiaries own in Colorado;
> - PEL's communications with its officers, directors, or subsidiaries in Colorado;
> - PEL's corporate officers or directors travel to Colorado;
> - PEL's Colorado business including any transactions in Colorado, assets in Colorado, investments in Colorado, or leases it has entered into in Colorado;

(Doc. No. 101 at 5–8.)

Although more specific than what was set forth in the Motion, many of the topics set forth in the Reply appear only tangentially related to Plaintiffs' primary personal jurisdiction argument—that Sonal Patel was acting as an agent for PEL during the relevant period. For example, it is difficult to see how discovery on the broad subject of "ASI's surety relationships (and its predecessor ASI, RCC) (either with Plaintiffs or with its prior bonding company) including any discussion regarding entering into or maintaining the relationships as well as the required indemnification[,]" would be substantially informative on the narrow question of Sonal Patel's relationship with PEL. Insofar as Plaintiffs wish to further explore and attempt to solidify

10

their allegation that Sonal Patel acted as an agent for PEL, the Court believes they should be allowed. However, the Court cannot allow Plaintiffs to search for information not narrowly tailored to this limited goal. Plaintiffs are not entitled to gain a "sneak peek" into non-jurisdictional elements of the case, nor are they allowed to go on a fishing expedition in search of highly improbable avenues for personal jurisdiction.

PEL also argues that even if the Court finds certain targeted discovery is indeed relevant to the issue of personal jurisdiction, the information sought still has a "low probability" of substantially affecting a personal jurisdiction analysis. (Doc. No. 100 at 4–12 (citing *See Gordon & Howard Assocs.*, No. 13-CV-01829-CMA-MJW, 2013 WL 5637678, at *4 (D. Colo. Oct. 15, 2013) ("The Court will not permit jurisdictional discovery if there is only a 'low probability' that additional discovery would reveal sufficient facts to alter the Court's conclusion that it lacks personal jurisdiction over Defendant." (citation omitted)).) As noted, outside of acknowledging that both PEL and Plaintiff make reasonable arguments and that personal jurisdiction here is subject to a good faith dispute, the Court comes to no conclusion on the issue of personal jurisdiction as pled in the Amended Complaint. Indeed, without a pending referral from the presiding judge on any such motion to dismiss, it would be inappropriate to do so. (*See* Doc. No. 16.) Still, the Court is satisfied that the operative Complaint reasonably pleads at least the possibility of personal jurisdiction over PEL. Further, the Court is satisfied that certain identified targets for jurisdictional discovery could substantially assist a personal jurisdiction analysis.[4]

---

[4] For example, discovery regarding the alleged call option between PEL and Sonal Patel appears highly relevant and likely useful to a personal jurisdiction analysis.

The Court finds that Plaintiffs are entitled to jurisdictional discovery. However, the Court is skeptical about some of the proposed discovery targets identified by Plaintiffs. Accordingly, the Court grants Plaintiffs' Motion for Jurisdictional Discovery in part and orders the parties to meet and confer with respect to the proper scope of jurisdictional discovery. After the parties appropriately meet and confer, the parties shall prepare a joint discovery dispute report. The Court will review the joint discovery dispute report and determine the appropriate scope of discovery during a discovery conference.

### B.     Plaintiff's Request to Amend the Operative Complaint

Plaintiffs also move to amend their operative Complaint "to address any pleading deficiencies identified by the Court as well as [issues raised by PEL in its motion to dismiss] and any new facts revealed through jurisdictional discovery." (Doc. No. 97 at 6.) Plaintiffs did not include a proposed second amended complaint with their Motion, nor did they include a "redlined" complaint striking through the text to be deleted and underlining the text to be added to the First Amended Complaint. (*See Id.* at 6–7.) While Plaintiffs broadly describe certain amendments they would make, including additional claims they wish to bring, they do not, and—at least regarding jurisdictional-related amendments—cannot, provide specific text they wish to add or remove. In short, Plaintiffs seek leave to amend the Complaint without giving the Court a concrete description of the form this would take.

Plaintiffs recognize this request is unusual and outside the scope of D.C.COLO.LCivR 15.1(b), but say that "under these specific circumstances this should not be required." (Doc. No. 101 at 2.)

> Plaintiffs ask for the following relief: Jurisdictional discovery be allowed and after the jurisdictional discovery is taken, Plaintiffs be allowed to amend with any

> facts revealed in that discovery as well as supplement the complaint with regard to any other issues raised in the Motion to Dismiss. The reason for this order of events is to avoid having to present multiple motions to amend with multiple draft amended complaints (one occurring before jurisdictional discovery and one after) and the inevitable multiple oppositions to those motions and related multiple rounds of briefing

*Id.*

While the Court acknowledges that Plaintiffs may be forced to engage in a two-step amendment process—one motion after jurisdictional discovery and one in response to a motion to dismiss—the Court will not put the cart before the horse by granting leave to amend without knowing what form the amendment would take. Though multiple motions to amend may not be the most efficient procedure, the Court's role in monitoring and controlling the amendment of pleadings is important to maintaining order through a proceeding. Put simply, the Court does not see a compelling reason to deviate from D.C.COLO.LCivR 15.1(b). *See Brooks v. Corr. Health Partners*, No. 18-CV-2578-PAB-SKC, 2022 WL 204598, at *1–2 (D. Colo. Jan 24, 2022) (finding "no error in the magistrate judge's determination that it was not possible to 'preemptively give [p]laintiff permission to amend his pleading without a motion that both complies with the rules and addresses the applicable standards governing amendment.'").

Accordingly, Plaintiffs' Motion to Amend is denied *without prejudice*. The Court's order in no way impacts Plaintiffs' ability to move to amend their complaint in the future, if and when they can provide the Court with a proposed amended complaint.

## CONCLUSION

Accordingly, for the foregoing reasons, Plaintiff's Motion to Amend the Complaint and for Jurisdictional Discovery is **granted in part and denied in part** as follows:

1. Plaintiffs' Motion for Jurisdictional Discovery is **GRANTED in part**.

    a. Plaintiffs will be allowed to conduct limited jurisdictional discovery concerning Defendant PEL.

    b. The scope and methods of such discovery will be determined at a conference before the Court. Accordingly, an Informal Discovery Conference is set for **February 7, 2023,** at **11:00 AM**. The Informal Discovery Conference will be conducted by video. The parties will be sent instructions on participating by video prior to the Conference.

    c. Plaintiffs and Defendant PEL are directed to confer and submit a Joint Discovery Dispute Report on or before **February 2, 2023**, in accordance with Judge Dominguez Braswell's Civil Practice Standards (Section VI) addressing the scope and methods of jurisdictional discovery.

2. Plaintiffs' Motion to Amend the operative Complaint is **DENIED without prejudice**.

Dated this 28th day of December, 2022

                                          **BY THE COURT:**

                                          Maritza Dominguez Braswell
                                          United States Magistrate Judge